UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

KELLY HARNETT,

           Petitioner,

v.

EILEEN RUSSELL,

           Respondent.

**MEMORANDUM & ORDER**
22-CV-00589 (HG)

---

**HECTOR GONZALEZ**, United States District Judge:

      Petitioner filed a petition for habeas corpus, pursuant to 28 U.S.C. § 2254, while she was previously incarcerated in state prison. ECF No. 2. Respondent Eileen Russell, the superintendent of that prison, has opposed the petition, arguing that it is moot because Petitioner's original conviction was vacated by an agreement with state prosecutors, pursuant to which she pled guilty to a lesser crime and received a lesser sentence. The Court originally denied Respondent's motion to dismiss the petition and directed Respondent to provide further records of Petitioner's state court proceedings, which Respondent has now done. ECF No. 8. Based on those additional records, the Court now dismisses the petition as moot for the reasons further set forth below and, alternatively, denies as unmeritorious the single constitutional challenge that Petitioner asserts is not moot.

## PROCEDURAL HISTORY

      Petitioner was convicted following a jury trial in Queens County Supreme Court of murder in the second degree and criminal possession of a weapon in the fourth degree based on events that occurred in July 2010. *People v. Harnett*, 134 N.Y.S.3d 273, 274 (2d Dep't 2020). She received an indeterminate sentence of seventeen years to life on the murder charge and a definite term of one year on the weapons charge. ECF No. 6 ¶ 6; ECF No. 10. Her conviction

was affirmed by the Appellate Division, Second Department on December 16, 2020. *Harnett*, 134 N.Y.S.3d at 274. The New York Court of Appeals denied leave to appeal on February 11, 2021. *People v. Harnett*, 165 N.E.3d 694 (N.Y. 2021). Petitioner filed a timely petition for habeas corpus by placing it in her prison's mail system on January 14, 2022. ECF No. 2.

Petitioner raises several grounds for habeas relief. First, she asserts that during her state court trial, the judge improperly excused two jurors after the jury had allegedly been sworn, declared a mistrial, and convened new jury selection proceedings, all in violation of her double jeopardy rights under the Fifth Amendment. ECF No. 2 at 5, 16–23.[1] Second, Petitioner asserts that her right to a public trial under the Sixth Amendment was violated because her brother was prohibited from attending the *voir dire* proceedings during jury selection. *Id.* at 8. Finally, Petitioner claims that she was entitled to immediate release from state prison because the prison's COVID-19 restrictions caused her repeatedly to lose access to the law library, in violation of her due process rights under the Fourteenth Amendment, and because the prison did not provide her with adequate medical care after she contracted COVID-19, in violation of the Eighth Amendment. *Id.* at 10.

Respondent responded to the petition by moving to dismiss it as moot. ECF No. 6. The basis for Respondent's mootness argument was that on January 7, 2022, around the same time Petitioner filed her petition, she also filed a motion in state court for resentencing under CPL 440.47 and Section 60.12 of New York's Penal Law. ECF No. 6 ¶ 17. Together, those

---

[1] In the field labeled "Ground Two" of the standard form that Petitioner used to file her petition, Petitioner argues that the New York courts failed properly to address the double jeopardy issue both on direct appeal and during a motion for collateral review that Petitioner filed pursuant to Section 440.10 of New York's Criminal Procedure Law (the "CPL"). ECF No. 2 at 7. The Court interprets this as an argument that the Double Jeopardy issue was not "adjudicated on the merits" in state court and that the deferential standard of review under 28 U.S.C. § 2254(d) should not apply, rather than as a separate ground for granting habeas relief.

provisions allow a survivor of domestic violence, who has been convicted of a crime, to petition the New York courts for an alternative sentence if the domestic violence that the defendant suffered was "a significant contributing factor" to the actions giving rise to the defendant's conviction.  N.Y. Penal L. § 60.12(1); N.Y. C.P.L. § 440.47(1)(a).

Respondent's motion to dismiss the petition was supported solely by a declaration by an Assistant District Attorney that described the events that purportedly occurred during Petitioner's state court proceedings.  ECF No. 6.  That declaration did not include any of the state court records corroborating Respondent's description, as required by Rule 5 of the Rules Governing Section 2254 Cases in the U.S. District Courts.  *Id.*  Therefore, the Court issued an order explaining that, if the record was as Respondent's attorney had described it, then Petitioner's claims were likely moot.  ECF No. 8.  However, the Court denied without prejudice Respondent's motion to dismiss the petition and ordered Respondent to provide the relevant state court records.  *Id.*  The Court explained that, after receiving the records, it would renew its consideration of Respondent's motion to dismiss *sua sponte* and directed Petitioner to inform the Court whether she intended to withdraw her petition in response to Respondent's assertions of mootness.  *Id.*

Respondent provided the records required by the Court's order.  ECF No. 10.  Those records reflect that Petitioner did, in fact, file the motion for resentencing described above.  *Id.* at 5.  In response to that motion, the state prosecutor assigned to Petitioner's case offered to vacate her conviction in exchange for Petitioner pleading guilty to manslaughter in the first degree and accepting an agreed-upon sentence of 13 years of incarceration, followed by five years of post-release supervision.  *Id.* at 6, 9–10.  Petitioner was represented by counsel and questioned extensively by the presiding judge to ensure that her plea was knowing and voluntary.  *Id.* at 12–

20.[2]  The database made available by the New York Department of Corrections and Community Supervision suggests that Petitioner's new, reduced sentence was effectively a sentence of time served because she was released from prison to post-release supervision within a few weeks of the sentencing proceedings.[3]

Petitioner responded to the Court's order, and her receipt of the state court records, by stating that she was "withdrawing all arguments set forth in [her] original petition, aside from the Double Jeopardy claim." ECF No. 14 at 2.  She reiterated this withdrawal in her reply brief, stating, "Petitioner is withdrawing every claim in her initial petition except for the Double Jeopardy Claim." ECF No. 15 at 15.  Petitioner contends that her double jeopardy claim was not mooted by the new conviction obtained through her guilty plea because the post-traumatic stress disorder ("PTSD") that she developed through her history of suffering from domestic violence was compounded by her experiences while incarcerated. *Id.* at 17–18.  She also still suffers from health problems and "extreme pain" due to allegedly inadequate medical care that she received while incarcerated. *Id.*  Petitioner explains that the neighborhood in Queens that she is required to visit periodically to report to her parole officer is dangerous—and that she witnessed a shooting during one of her visits—which exacerbates her PTSD. ECF No. 13 at 7–8.  Finally, Petitioner's conviction has prevented her from finding a job; she insists that many prospective

---

[2]  The transcript of Petitioner's guilty plea and sentencing proceedings reflects that, as part of this agreed-upon resolution, Petitioner waived her right to appeal her new conviction and sentence. ECF No. 10 at 7, 20–22. However, the transcript is silent about whether Petitioner agreed to withdraw her current petition for habeas corpus or agreed not to file a new petition for habeas corpus attacking her new conviction, and Respondent has not provided the Court a copy of a written plea agreement. *Id.*

[3]  N.Y. DEP'T OF CORRECTIONS AND COMMUNITY SUPERVISION (last visited Nov. 29, 2023), https://nysdoccslookup.doccs.ny.gov/ (indicating that Petitioner was released on parole on May 5, 2022, and that the "Maximum Expiration Date" for her period of post-release supervision is November 5, 2025).

employers have expressed a willingness to hire her until they learn about her conviction. *Id.* at 8–9.

## LEGAL STANDARD

To determine whether a petitioner in state custody is entitled to a writ of habeas corpus, federal courts apply the standard of review set forth in 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). That statute provides in relevant part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" clearly established federal law only if "the state court reached a conclusion of law that directly contradicts a holding of the Supreme Court" or, "when presented with facts that are materially indistinguishable from a relevant Supreme Court precedent," the state court arrived at a different result. *Evans v. Fischer*, 712 F.3d 125, 132 (2d Cir. 2013).[4] The writ may also be granted if a state court decision is an "unreasonable application" of clearly established federal law, meaning "the state court identifie[d] the correct

---

[4] Unless noted, case law quotations in this order accept all alterations and omit internal quotation marks, citations, and footnotes.

5

governing legal principle from [Supreme Court] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

In addition to correcting a state court's errors of law, a district court may grant a writ of habeas corpus when a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The state court's determination of the facts is presumed to be correct, however, and the petitioner bears the burden of "rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010).

Since Petitioner is proceeding *pro se*, her pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *O'Neal v. New York*, 465 F. Supp. 3d 206, 216 (E.D.N.Y. 2020); *see also, e.g.*, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (noting that even after *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), courts "remain obligated to construe a *pro se* complaint liberally"). "Nonetheless, a *pro se* litigant is not exempt from compliance with relevant rules of procedural and substantive law." *Gutierrez v. Capra*, No. 14-cv-6887, 2019 WL 1508454, at *7 (E.D.N.Y. Apr. 5, 2019) (denying habeas petition by *pro se* state prisoner).

## DISCUSSION

### I.     The Petition for Habeas Corpus Has Become Moot

Petitioner's agreement to vacate her original conviction has deprived the Court of jurisdiction to grant her petition for habeas corpus challenging that conviction. A habeas petition, like any other type of case, must satisfy the case-or-controversy requirement in Article III of the Constitution. *See Janakievski v. Exec. Dir., Rochester Psychiatric Ctr.*, 955 F.3d 314, 319 (2d Cir. 2020) (holding that habeas petition was not moot even though it challenged state

6

court order that had already expired because petitioner had proved a continuing injury); *see also Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (affirming dismissal of habeas petition as moot). To satisfy that requirement, "a party must, at each stage of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision." *Janakievski*, 955 F.3d at 319. "If, as a result of changed circumstances, a case that presented an actual redressable injury at the time it was filed ceases to involve such an injury, it ceases to fall within a federal court's Article III subject matter jurisdiction and must be dismissed for mootness." *Id.*

      A habeas petitioner has suffered an injury "so long as the petitioner continues to be held in the custody that he alleges is unlawful," including non-custodial restrictions on liberty, such as the restraints on liberty that accompany parole. *Janakievski*, 955 F.3d at 319. Additionally, even if the habeas petitioner is challenging an order or judgment that has expired, the petition will not be moot, "so long as the petitioner suffers some concrete and continuing injury or collateral consequence resulting from the challenged order." *Id.* However, the existence of an injury is not enough to avoid mootness. As described above, that injury "must be 'likely to be redressed by a favorable judicial decision.'" *Id.* (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)). If "it is impossible for a court to grant any effectual relief whatever to the prevailing party"—even a "partial remedy"—then a habeas petition has become moot. *Id.*

      Although Petitioner is still in custody because she is on post-release supervision, her request for habeas corpus relief based on alleged constitutional errors that led to her conviction after trial on charges of second-degree murder and fourth-degree criminal possession of a weapon has been mooted by her agreement to vacate that conviction. As described above, that agreement entailed Petitioner pleading guilty to the lesser crime of manslaughter and receiving an agreed-upon sentence, which included the period of post-release supervision that she is now

7

serving. Multiple courts within the Second Circuit have found that a habeas petition was rendered moot when the judgment that the habeas petition challenged was subsequently vacated and a new judgment was entered. *Wright v. Rivera*, No. 06-cv-1725, 2007 WL 4264547, at *1 (E.D.N.Y. Nov. 30, 2007) (holding that petitioner's challenge to his sentence was moot because he had been resentenced); *Trapp v. Poole*, No. 07-cv-893, 2010 WL 3724879, at *2–3 (N.D.N.Y. Sept. 17, 2010) (holding that due process challenge to term of supervised release was mooted after petitioner was resentenced without a term of supervised release). Consistent with these decisions, the Seventh Circuit has recently held that a "state court's vacatur of [the petitioner's] conviction ended federal jurisdiction over [the petitioner's] habeas corpus petition under the terms of § 2254." *Brown v. Vanihel*, 7 F.4th 666, 670 (7th Cir. 2021) (further holding that the petition had become moot according to Article III criteria).

      The injuries that Petitioner continues to suffer are not of the type described by the Second Circuit in *Janakievski* that would permit Petitioner to avoid the mooting effect of her plea deal because they are not injuries "traceable to" her now-vacated first conviction. *Janakievski*, 955 F.3d at 320. Petitioner would have served 13 years in prison according to her new guilty plea and agreed-upon sentence. ECF No. 10 at 6, 9–10. Accordingly, although the exacerbation of her PTSD, the allegedly inadequate medical care that she received in prison, and her difficulty obtaining employment are all regrettable circumstances, they are injuries attributable to her new conviction. Similarly, since Petitioner's agreed-upon sentence for her new conviction included a term of post-release supervision, the fear that she experiences during visits to her parole officer is also an injury attributable to her new conviction. These injuries cannot be cured by the Court deciding that Petitioner's now-vacated conviction was tainted by constitutional violations and, therefore, cannot "be redressed by a favorable judicial decision." *Janakievski*, 955 F.3d at 319;

*see also Smith v. Halett*, No. 20-cv-2598, 2023 WL 5153520, at *2 (E.D.N.Y. Aug. 10, 2023) (holding that habeas petition challenging state conviction, purportedly brought pursuant to 28 U.S.C. § 2241, was moot because intervening Appellate Division decision vacating that conviction meant that "there [was] no remaining relief that this Court can provide in response to this petition," even though petitioner remained in custody awaiting new trial).

## II.    Petitioner's Double Jeopardy Claim Would Fail on the Merits

Even if the Court were to reach Petitioner's double jeopardy claim, which is the only claim she has not conceded is moot, the Court would deny Petitioner's request for habeas corpus relief on the merits.  The facts available to the Court demonstrate unequivocally that jeopardy had not yet attached when the state trial judge discontinued Petitioner's jury selection proceedings and started over with a new pool of prospective jurors.  Although neither party has provided the Court with a transcript of these jury selection proceedings, the description of the proceedings in the state court decision denying Petitioner's motion to vacate her conviction, made pursuant to CPL 440.10, make clear that the trial judge did not declare a mistrial after empaneling and swearing in a full jury.  ECF No. 15 at 162–63.  Instead, the trial judge had selected only eleven jurors when he encountered an unspecified scheduling conflict that prevented the court from continuing with the trial.  *Id.*  The trial judge, therefore, "disbanded" the jurors who had already been selected "prior to the completion of jury selection," at which time "[t]he eleven jurors already selected were not sworn in."  *Id.*  Rather than requiring the jurors who had been selected to return when the selection process resumed approximately two weeks later, the trial judge began the selection process anew.  *Id.* at 163.  Petitioner's accounts of these events in her original petition, her reply brief, and an affirmation that she filed with the Appellate Division during her direct appeal, are consistent with this description.  ECF No. 2 at 16–22; ECF No. 15 at 5–6, 62–64.

9

The Appellate Division rejected Petitioner's argument that these events amounted to a double jeopardy violation. Neither party has presented the Court with a full copy of Petitioner's *pro se* filings submitted to the Appellate Division, but Petitioner insists that she made her double jeopardy argument in her *pro se* brief, and Respondent has not contested that assertion. ECF No. 13 at 4. The Court therefore deems Petitioner's double jeopardy argument to have been exhausted during her direct appeal and rejected by the Appellate Division's statement that "[t]he defendant's remaining contentions, including those raised in her pro se supplemental brief, are without merit." *Harnett*, 134 N.Y.S.3d at 275. As the Supreme Court has instructed, even though this portion of the Appellate Division's decision "is unaccompanied by an explanation," it is still deemed to be a decision on the merits that is entitled to deference under AEDPA. *Harrington v. Richter*, 562 U.S. 86, 98 (2011). Accordingly, Petitioner must "show[] there was no reasonable basis for the state court to deny relief." *Id.*

Petitioner cannot meet her burden because the Appellate Division's decision rejecting her double jeopardy claim was not contrary to established Supreme Court precedent. More than 40 years before the Appellate Division's decision, the Supreme Court was called upon to decide "whether the federal rule governing the time when jeopardy attaches in a jury trial is binding on [the states] through the Fourteenth Amendment." *Crist v. Bretz*, 437 U.S. 28, 29 (1978). The Supreme Court answered that question in the affirmative and "explicitly h[e]ld" that "[t]he federal rule that jeopardy attaches when the jury is empaneled and sworn is an integral part of the constitutional guarantee against double jeopardy." *Id.* at 38. During the intervening decades, the Supreme Court has continued to adhere to that definition. *See Martinez v. Illinois*, 572 U.S. 833, 834 (2014) (reversing judgment of Illinois Supreme Court that would have permitted state to retry defendant because "[o]ur cases have repeatedly stated the bright-line rule that jeopardy

10

attaches when the jury is empaneled and sworn"). Since a full jury had not been selected and sworn before the state trial judge had a scheduling conflict that led him to restart jury selection from the beginning approximately two weeks later, Petitioner's double jeopardy right had not attached at that time, and was therefore not violated. *See Thomas v. Scully*, 854 F. Supp. 944, 960–61 (E.D.N.Y. 1994) (concluding based on pre-AEDPA, *de novo* review that double jeopardy had not attached where trial judge dismissed jury "after eleven jurors had been sworn, and the twelfth juror and all alternate jurors had been selected but not yet sworn").[5]

Petitioner attempts to explain that her double jeopardy right did, in fact, attach before the trial judge decided to restart the jury selection process because a twelfth juror was initially selected but excused before jury selection had been completed because that juror later called her own scheduling conflict to the trial judge's attention. ECF No. 2 at 16–17. Petitioner concedes, however, that the selection of alternate jurors had not been completed at that time, so the entire jury had not been selected. *See id.* at 16–19 (Petitioner's discussion of the court's attempt to select a "first alternate"). Petitioner relies on New York's practice of administering the trial oath to individual jurors "immediately" as they are selected, which is required as a matter of state procedure by CPL 270.15(2), to argue that double jeopardy attached immediately when that twelfth juror was selected, even though the jury selection process had not been completed. ECF No. 2 at 16, 21–22. To support this argument, she cites an Appellate Division decision explaining that, as a matter of state law, "[j]eopardy attaches once 12 jurors have been sworn" "even though the alternate jurors have not been selected or sworn." *People v. Innis*, 582

---

[5] Even if Petitioner had not included her double jeopardy argument in her *pro se* brief filed with the Appellate Division, and the Court were therefore to give no deference to the Appellate Division's decision, the Court would reach the same conclusion based on the Supreme Court's unequivocal holdings in *Crist* and *Martinez*.

11

N.Y.S.2d 245, 245 (2d Dep't 1992). Alternatively, Petitioner argues that if the potential twelfth juror had not been immediately sworn, then the jury selection process was still defective because the trial judge would have violated CPL 270.15. ECF No. 2 at 18.

In either circumstance, no violation of Petitioner's federal right against double jeopardy occurred. "[F]ederal habeas corpus relief does not lie for errors of state law" because "[t]he habeas statute unambiguously provides that a federal court may issue a writ of habeas corpus to a state prisoner 'only on the ground that [she] is in custody in violation of the Constitution or laws or treaties of the United States.'" *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (quoting 28 U.S.C. § 2254(a)). New York is free to establish state-specific procedures for the swearing in of jurors, but a state court's failure to follow CPL 270.15 does not give rise to a federal constitutional claim. *Wells v. Bradt*, No. 12-cv-4829, 2018 WL 4356721, at *5 (E.D.N.Y. Sept. 12, 2018) (denying habeas petition based partially on excusal of juror after he was sworn, but prior to the completion of jury selection, because "§ 270.15 is a provision of state law," and "Section 2254 authorizes federal habeas courts to grant relief only on federal claims").

Similarly, New York may define the right against double jeopardy, as protected by its own constitution, to attach at an earlier time than Petitioner's federal double jeopardy right. But to obtain federal habeas relief, Petitioner must show that she was deprived of her federal right against double jeopardy, as defined by *Crist* and *Martinez*. She must also show that the New York courts' application of that federal right in her case resulted in a decision that is "so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020). Petitioner cannot meet this burden because the highest courts in at least two states have concluded, after the Supreme Court's decision in *Crist*, that double jeopardy does not attach until after both regular and alternate jurors have been selected and

12

sworn. *See In re Mendes*, 592 P.2d 318, 322 (Cal. 1979) (holding that "the jury selection in its entirety was not completed prior to the swearing of the alternate jurors" and that double jeopardy did not attach until that point); *People v. McDermott*, 51 P.3d 874, 879 (Cal. 2002) (reaffirming validity of double jeopardy rule adopted in *Mendes* and stating that it was "not in conflict with *Crist*"); *Livingston v. State*, 544 N.E.2d 1364, 1367 (Ind. 1989) (holding that double jeopardy did not attach "until the regular panel and the alternates, who sit with the regular panel and may very well act as a member of it, have been sworn"). These decisions answer a question left unaddressed by the Supreme Court in *Crist* and *Martinez*—*i.e.*, whether alternate jurors are considered members of the jury whose selection and swearing must be completed before double jeopardy attaches. Although the Supreme Court may reach a contrary conclusion if it is ever presented with the same question, these decisions show that, at minimum, there is room for fairminded disagreement under current Supreme Court precedent about whether double jeopardy attaches once only the regular jurors have been selected and sworn. Therefore, this Court may not conclude that the Appellate Division's rejection of Petitioner's double jeopardy claim was an unreasonable interpretation of Supreme Court precedent.

## CONCLUSION

For the reasons set forth above, the Court DENIES the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. ECF No. 2. The Court declines to issue a certificate of appealability because Petitioner has failed to make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). Any additional request for a certificate of appealability must be addressed to the Second Circuit. *See* Fed. R. App. P. 22(b). The Court

respectfully directs the Clerk of Court to enter judgment denying the petition, to close this case, and to mail Petitioner a copy of this order and the judgment.

SO ORDERED.

                                           */s/ Hector Gonzalez*
                                           HECTOR GONZALEZ
                                           United States District Judge

Dated: Brooklyn, New York
        November 29, 2023